**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in compliance with D.N.J. LBR 9004-1(b)

**HILL WALLACK LLP**
Angela C. Pattison, Esq.
21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543
609-924-0808
Email: apattison@hillwallack.com
*Attorneys for Plaintiff*

| | |
|---|---|
| In Re:<br><br>Louis Simpson,<br><br>     Debtor | Bankruptcy Case No.: 20-21876-RG<br><br>Chapter 7 |
| Matthew   Marden,<br><br>     Plaintiff/Creditor<br>vs.<br><br>Louis Simpson,<br><br>     Debtor/Defendant | Judge: Rosemary Gambardella, U.S.B.J.<br><br>Adversary Proceeding No. 21-_____ |

## COMPLAINT TO EXCEPT PLAINTIFF'S JUDGMENT FROM DISCHARGE AND OBJECTION TO DISCHARGE

Plaintiff Matthew Marden ("Plaintiff"), by his undersigned counsel, as and for his complaint against Louis Simpson (the "Debtor") alleges the following, upon information and belief:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this bankruptcy case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      This adversary proceeding is brought under 11 U.S.C. §§ 523(a)(2)(A),
523(a)(2)(B), 523(a)(4), 523(a)(6), 727(a)(3), 727(a)(4)(A) and 727(a)(5), and Rules 6009 and
7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the
determination of the non-dischargeability of debts due to Plaintiff and a judgment fixing
the amount of these debts or, alternatively, to deny the Debtor his discharge.

3.      Since this action arises under the pending Chapter 7 bankruptcy case of the
Debtor, this Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and
Bankruptcy Rules 6009 and 7001.

4.      Under 28 U.S.C. § 1409(a), this Court is the proper venue for this proceeding.

5.      In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final
orders and judgment by this Court if it is determined that this Court, absent the consent of the
parties, cannot enter final orders or judgment consistent with Article III of the United States
Constitution.

## BACKGROUND

6.      On October 22, 2020 (the "Filing Date"), the Debtor filed a voluntary petition for
relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the
United States Bankruptcy Court of New Jersey (Newark) (the "Court").

7.      Benjamin A. Stanziale, Jr. was appointed as the Chapter 7 Trustee of the Debtor's
estate and, by operation of law, has qualified as the permanent Chapter 7 Trustee of the Debtor's
estate.

8.      A deadline of January 19, 2021 was fixed by which adversary proceedings
asserting claims under Sections 523 and 727 of the Bankruptcy Code must be commenced.

## THE PARTIES

2

9.      Plaintiff is in individual residing in Marlborough, Massachusetts.

10.     Plaintiff is a creditor holding a money judgment against the Debtor which was obtained in an action commenced in the Trial Court of Massachusetts, The Superior Court ("Superior Court"), entitled *Matthew Marden v. Simpson Financial Group Inc. and Louis A. Simpson*, Docket No. 1884CV01942 ("Massachusetts Action") due to Debtor's fraudulent and intentional misclassification as an independent contractor and the non-payment of earned wages in violation of state law.

11.     On December 9, 2019, Plaintiff obtained a Writ of Execution against the Debtor and Simpson Financial Group ("SFG") in the amount of $1,405,996.30 ("First Judgment"). A copy of the First Judgment is annexed hereto as **Exhibit "A"**.

12.     On December 9, 2019, Plaintiff obtained a Writ of Execution against SFG in the amount of $27,483.59 ("Second Judgment", together with the First Judgment, the "Judgments"). A copy of the Second Judgment is annexed hereto as **Exhibit "B"**.

13.     The Debtor is an individual residing in Haledon, New Jersey.

14.     Upon information and belief, at all relevant times herein Debtor held the position and operated as the president of SFG, while also holding 100% ownership of said entity.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### A.  Plaintiff was misclassified as an Independent Contractor

15.     SFG is/was an insurance company operating in Boston Massachusetts.

16.     SFG is in the business of selling insurance policies to the general public.

17.     As president of SFG, Debtor acted in a decision-making or management role and he was in ultimate control of the decisions made by his company, SFG.

18.     In his capacity as president of SFG, Debtor played a substantive role in the

3

management of the business, with some or all of the powers to hire and fire employees, supervise and control their work schedules and conditions of employment, to determine their rate and method of payment, and to maintain their employment records.

19.    Upon information and belief, Debtor maintained 100% control of the SFG business assets and utilized them as his own personal property.

20.    At all relevant times herein, Plaintiff was employed by Debtor's business, SFG.

21.    Plaintiff was hired by SFG and Debtor as a health insurance agent in or around August 2014.

22.    Plaintiff had no experience as an insurance agent prior to being hired by Debtor to work for SFG.

23.    Plaintiff's job duties at SFG included selling and writing insurance policies.

24.    Debtor personally trained, supervised, and directed Plaintiff's work activities, including the manner in which he conducted sales.

25.    Upon information and belief, Plaintiff was intentionally misclassified and paid by SFG as an independent contractor at the direction of the Debtor in violation of Massachusetts State Law.

26.    In being classified as an independent contractor, Plaintiff was denied access to critical benefits and protections that an employee is entitled to by law, such as the minimum wage, overtime compensation, family and medical leave and unemployment insurance.

27.    In his work as a health insurance Agent, Plaintiff was subject to the control and direction of SFG and Debtor in connection with the performance of his work (i.e. – SFG set Plaintiff's hours and required him to work from its office Monday through Friday between 8:30 a.m. and concluding at 8:00 or 9:00 p.m.).

28.     Additionally, Debtor instructed Plaintiff as to the manner in which he conducted his work, including the strategies devised by Debtor to increase sales for SFG.

29.     Plaintiff, in turn, trained other employees regarding these methods and procedures at Debtor's instruction and implemented any and all actions taken at Debtor's direction.

30.     All sales agreements and contracts that Plaintiff signed with customers contained a heading with SFG's name and information.

31.     The services performed by Plaintiff, namely selling and writing insurance policies, were within the usual course of business of SFG.

32.     In fact, selling and writing insurance policies is a necessary part of SFG's business.

33.     Plaintiff was not engaged in an independently established trade or business of the same nature as the service he performed for SFG. He worked extensively and exclusively for SFG during the time of his employment with the company.

34.     In sum and substance, the relationship between SFG and Plaintiff was not an independent contractor relationship, but an employer/employee relationship.

35.     As a direct result of Debtor's fraudulent and intentional misclassification of Plaintiff as an independent contractor, Plaintiff suffered damages, including lost wages.

**B.  <u>Commission Structure</u>**

36.     From the outset of his employment, Debtor, through his company, SFG agreed to pay Plaintiff on a commission-only basis.

37.     SFG agreed to pay Plaintiff commissions pursuant to a written commission

structure ("Commission Structure"). A true and accurate copy of the Commission Structure in place as of 2015 is annexed hereto as **Exhibit "C"**.[1]

38.    Plaintiff was entitled to commissions under the "Agency Manager" title in the Commission Structure.

39.    By way of example, under the Commission Structure, SFG agreed to pay Plaintiff $6.00 per month for health insurance policies that he sold.

40.    Additionally, Plaintiff earned commission of between 30% and 70% of the monthly premium for non-health insurance policies, such as life insurance, vision and dental insurance. In the first year of these policies, Debtor, through his control of SFG, promised to pay Plaintiff a six-month advance on commissions. After the six-month period, Plaintiff earned residual commission at the applicable percentage (30% to 70%) of the premiums each month. After the first year of the policies Plaintiff sold, his commission rates were reduced as set forth in the Commission Structure. See Exhibit "C".

41.    In or around January 2015, Debtor ceased directly selling insurance policies himself such that any and all policies sold on behalf of SFG were subject to the payment of Commissions to Plaintiff and/or other insurance agents.

42.    Throughout the course of Plaintiff's employment through SFG, the Debtor through his control of SFG, failed to pay Plaintiff some or all of his earned commissions.

43.    Defendant, in his leadership role at SFG, caused the company's failure to pay Plaintiff the commissions he had actually earned commission for all of the policies sold.[2]

---

[1] Upon information and belief, prior to the Commission Structure implemented in 2015, the commission structure in place was not materially different.

[2] For example, in January 2016, Plaintiff sold at least the following number of new policies from Chesapeake Life Insurance Company: (i) 156 Critical Illness Policies, (ii) 79 Income Protection policies, (iii) 41 Hospital Confinement

44.     By the close of January 2016, Plaintiff made approximately $124,728.48 in sales for SFG and earned $42,554.53 in commissions pursuant to the Commission Structure. In addition, Plaintiff also had $92,000.19 worth of previously sold policies[3], for which he was owed $20,094 in residual commissions pursuant to the Commission Structure.

45.     Upon information and belief, and based upon the records available to Plaintiff, during the period of August 2014 through June 22, 2015, Plaintiff earned, but was not paid $23,370.20 in commissions.

46.     Upon information and belief, and based upon the records available to Plaintiff, during the period of June 23, 2015 through the end of his employment with SFG, Plaintiff earned, but was not paid $395,141.10 in commissions.

47.     In total, SFG has failed to pay Plaintiff $418,511.30 ("Commissions Earned") due to the inappropriate misclassification of Plaintiff's employment.

48.     All of the Earned Commissions SFG owes to Plaintiff are definitely determined.

49.     Upon information and belief, the Debtor, acting in concert with SFG and others, intentionally provided false and misleading information in the form of the Commission Structure to induce Plaintiff to continue to work for the Debtor's business, SFG.

50.     The commissions are arithmetically determinable, as they are simply a percentage

---

policies, (iv) 86 Protect Fit policies, (v) 31 Dental Policies, (vi) 35 Vision policies, (vii) 5 Accident Protection policies and (viii) 1 Simplified Issue Life policy which combined total approximately $124,728.48 in monthly commissions. In addition to these policies sold in January, Plaintiff was owed $92,000.19 in monthly premiums as is discussed below in greater detail.

[3] Mr. Marden was entitled to residual commissions from at least the following number of policies he had sold prior to 2016 from Chesapeake Life Insurance Company: 556 Critical Illness policies, 275 Income Protection policies, 297 Hospital Confinement Policies, 242 Protect Fit policies, 35 Dental policies, 47 Vision policies, 3 Simplified Issued Life policies, 26 Accident Protection policies, and 1 Final Expense policy, the total of which aggregates approximately $92,000.19 in monthly premiums.

of sales made and a flat monthly rate for the duration of a policy as set forth in the Commission Structure.

51.     The Commissions Earned are due and payable, as there are no outstanding contingencies barring their payment.

52.     To date, Debtor nor SFG have paid Plaintiff the Commissions Earned, which gave rise to the Massachusetts action and the Judgments entered therein which are annexed as Exhibits "A" and "B."

53.     Over the relevant period of Plaintiff's employment by SFG, Plaintiff approached Debtor to inquire as to when the outstanding Commissions would be paid, to which Debtor provided multiple, fraudulent explanations to induce Plaintiff to continue working at SFG.

54.     Over the relevant period of Plaintiff's employment by SFG, Plaintiff approached Debtor to inquire as to the cause of SFG and Debtor's prolonged failure to pay Plaintiff, to which Debtor provided intentionally false explanations to induce Plaintiff to continue working at SFG.

55.     Rather, upon information and belief, Debtor was using the monies earned by Plaintiff, and others insurance Agents working on behalf of SFG, as his personal funds and/or to pay himself a large income to which he was not legally entitled.

## C.  **Massachusetts Action**

56.     On or about June 18, 2018, Plaintiff instituted the Massachusetts Action, arising out of Debtor's misclassification as an independent contractor and non-payment of earned wages in violation of state law (*M.G.L. c. 149, §§148B*), non-payment of wages (*M.G.L. c. 149, §148*), breach of contract, as well as unjust enrichment.

57.     The Debtor failed to interpose an answer to the complaint in the Massachusetts Action and on July 31, 2019 a default was entered against the Debtor and SFG.

58.    On October 1, 2019, Plaintiff filed his Motion for Assessment of damages and on December 5, 2019, the matter was taken under advisement.

59.    On December 9, 2019 both the Judgements were entered by the Court.

60.    As of the Filing Date, no part of the Judgments have been paid.

61.    As a result of the foregoing, debt due Plaintiff by the Debtor in a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs should be excepted from the Debtor's discharge and judgment should be granted in favor of Plaintiff for that sum.

**D.    The Debtor's Petition, Schedules, Statement of Financial Affairs and 341 Meeting**

62.    The Debtor identified the Plaintiff as a secured creditor on Schedule "D" to his Petition and listed that the claim as secured by "All Personal Property".

63.    The Debtor did not assert that the debt due Plaintiff was contingent, unliquidated or disputed.

64.    Section 521(a) of the Bankruptcy Code requires, among other things, that a debtor file a complete schedule of his assets and liabilities.

65.    The Debtor knowingly and falsely failed to disclose:

a.    Debtor's lease was omitted from Schedule "H", whereas a monthly housing payment and deposit have been scheduled;

b.    Debtor's security deposit relating to said lease is believed to be understated as plead on Schedule "B" in that Debtor's monthly housing payment is disclosed as $3,650 per month;

c.    The amount, frequency and source of residuary checks received from SFG;

9

d.      The value of Debtor's interest in SFG, including the company's assets, including, but not limited to ongoing commissions, bank accounts, and other property.

e.      Debtor's personal use of SFG business assets;

f.      Any and all professional licenses held by the Debtor, including, but not limited to any license required to sell life insurance, health insurance, real estate and/or financial products;

g.      Any and all jewelry owned by the Debtor, including, but not limited to, diamond cufflinks;

h.      Any and all luxury items owned by the Debtor, including designer clothing and shoes;

i.      Any and all ownership interest held by Debtor in relation to all businesses, including but not limited to, Richmond Private Equities, Richmond Equities, Fountainhead Advisors, Stratton Equities, MA Business Associates and/or Bulldog Powerwashing;

j.      Any and all business relationships held by Debtor in relation to all businesses, including, but not limited to, Richmond Private Equities, Fountainhead Advisors, Richmond Equities, MA Business Associates and/or Bulldog Powerwashing;

k.      Debtor's pre-petition ownership and disposition of a whole life insurance policy;

l.      Debtor's pre-petition ownership and disposition of firearms;

m.     Any real or personal property transferred to his Debtor's former spouse;

n.     Any real or personal property transferred to his Mother;

o.     Any real or personal property held by his Mother as a strawman;

p.     Any real or personal property transferred to Debtor's "significant other" listed on Schedule J as a dependent; and/or,

q.     Any other property owned or held on behalf of the Debtor that was not disclosed.

66.     At the meeting of creditors, the Debtor was asked by the Trustee about his income and business assets, to which Debtor falsely omitted his business relationship with numerous entities, including, but not limited to those referenced herein.

67.     At the meeting of creditors, the Debtor was asked by the Trustee about his income and business assets, to which Debtor failed to disclose that he continues to be marketed online as a loan officer and top expert on the sale of health insurance by Stratton Equities.

68.     At the meeting of creditors, Debtor failed to correct previous false disclosures in that he does maintain active professional licenses for the sale of health and life insurance in certain states, including, but not limited to Massachusetts and New Jersey.

69.     At the meeting of creditors, the Debtor testified that he is in possession of two automobiles on his mother's behalf, whereas his mother is being utilized as a straw man to provide the Debtor with two new and/or luxury automobiles

70.     At the meeting of creditors, Debtor testified that 2015 was the year in which he made the most money at SFG.

71.     Trustee Stanziale has moved the Court for additional time to continue his investigation into Debtor's incomplete disclosure of estate assets.

72.     The Plaintiff hereby reserves the right to amend and/or supplement this Complaint to include any additional false statements and/or failures to disclose discovered by the Trustee.

## FIRST CLAIM FOR RELIEF
(Non-Dischargeability under Section 523(a)(2)(A))

73.     Plaintiff repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth.

74.     Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

75.     As set forth herein, the debts due Plaintiff are not dischargeable because they are claims for money, property, and the extension of credit obtained from Plaintiff by the Debtor's false pretenses, false representations, and actual fraud.

76.     Debtor induced Plaintiff to work on behalf of SFG to generate insurance sales.

77.     Debtor knowingly, and intentionally kept the money earned by Plaintiff and did not turn those funds over to Plaintiff as required pursuant to the Commission Structure.

78.     Thereafter, Debtor converted said funds to his own use to the detriment of Plaintiff.

79.     Upon inquiry, Debtor falsely assured Plaintiff that his Commissions would be repaid at a later date and/or that there were financial constraints delaying payment.

80.     By reason of the foregoing, pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, the debts due Plaintiff should be excepted from discharge and Plaintiff is entitled to judgment in favor of Debtor in a sum no less than $1,405,996.30 as of December 9,

2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from

December 9, 2019 and costs.

### SECOND CLAIM FOR RELIEF
#### (Non-Dischargeability under Section 523(a)(2)(B))

81.     Plaintiff repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth.

82.     Pursuant to Section 523(a)(2)(B) of the Bankruptcy Code, a debtor is not

discharged from any debt "for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained" by use of a materially false statement in writing

with respect to the debtor or an insider's financial condition on which a creditor to whom the

debtor is liable relied that the debtor caused to be made or published with intent to deceive.

83.     Upon information and belief, Debtor is an insider of SFG within the meaning

of Section 101(31)(A)(iv) of the Bankruptcy Code as Debtor is the individual who had an

ownership interest and control of SFG.

84.     Debtor, through his role as sole owner and President of SFG, incorrectly

categorized Plaintiff as an Independent Contractor in order to avoid paying him regular income

to which he would be entitled.

85.     Debtor fraudulently induced Plaintiff to work as an independent contractor for

SFG with no intention to pay amounts earned pursuant to the written Commission Structure.

86.     Alternatively, Debtor fraudulently induced Plaintiff to enter into the Commission

Structure with knowledge that the Debtor's business lacked the means to satisfy their payment

obligations under the agreement.

87.     The Commission Structure that the Debtor provided to Plaintiff consisted of

written statements containing materially false information concerning an insider's financial condition which could and/or would not be satisfied.

88.     Upon information and belief, Debtor knew that the compensation structure contained in the Commission Structure materially misstated the financial capabilities and assets of the Debtor, through his company, SFG, to pay Plaintiff for amounts earned.

89.     Predicated upon the compensation structure contained in the Commission Structure, Plaintiff continued his employment with Debtor's company, SFG, and he would not have if it had he been provided with truthful and accurate disclosures reflecting the financial condition of the business.

90.     By reason of the foregoing, pursuant to Section 523(a)(2)(B) of the Bankruptcy Code, the debts due Plaintiff should be excepted from discharge and Plaintiff is entitled to judgment in favor of Debtor in a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs..

## THIRD CLAIM FOR
## RELIEF
### (Non-Dischargeability under Section 523(a)(4))

91.     Plaintiff repeats and realleges paragraphs 1 through 90 hereof, as if fully set forth herein.

92.     Pursuant to Section 523(a)(4) of the Bankruptcy Code, a debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

93.     The debts due to Plaintiff are not dischargeable because they arise from the

Debtor's fraud and/or defalcation as the President of SFG.

94.     The sums due to Plaintiff are derived from the receipt of payments by SFG from

insurance providers for policies that Plaintiff sold on its behalf.

95.     SFG received payment from said insurance providers, however, Debtor

redirected said funds to himself in violation of his duty to SFG and/or Plaintiff.

96.     By reason of the foregoing, pursuant to Section 523(a)(4) of the

Bankruptcy Code, the debts due Plaintiff should be excepted from discharge and Plaintiff is

entitled to judgment in favor of Debtor in a sum no less than $1,405,996.30 as of December 9,

2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from

December 9, 2019 and costs.

**FOURTH CLAIM FOR RELIEF**
(Non-Dischargeability Section
523(a)(6))

97.     Plaintiff repeats and realleges paragraphs 1 through 96 hereof, as if fully set

forth herein.

98.     Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debtor is not

discharged from any debt "for willful and malicious injury by the debtor to another entity or to

the property of another entity."

99.     The debt due to Plaintiff is not dischargeable because it is a debt for willful

and malicious injury by the Debtor.

100.     The Debtor intentionally and without excuse converted and refused to pay the

Commissions Earned to Plaintiff that he was legally obligated to pay under the Commission

Structure.

101.     The decision for SFG to not pay Plaintiff was made by Debtor and carried out at

Debtor's sole discretion.

102.    In reality, it is believe that Debtor redirected the funds due to Plaintiff from SFG to his own personal use.

103.    Upon inquiry, the Debtor induced Plaintiff to continue working without full pay with false promises of promotion to ownership in the future.

104.    The Debtor knowingly induced Plaintiff to continue to work for SFG through false representations concerning SFG's financial condition and its ability to pay Plaintiff for Commissions Earned.

105.    Debtor induced Plaintiff to continue to generate money for SFG so that Debtor could convert said funds to his own use to Plaintiff's detriment.

106.    By reason of the foregoing, pursuant to Section 523(a)(6) of the Bankruptcy Code, the debt due to Plaintiff should be excepted from discharge and Plaintiff is entitled to judgment in favor of Debtor a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs.

## **FIFTH CLAIM FOR RELIEF**

(Denial of Discharge under 11 U.S.C. § 727(a)(3))

107.    Plaintiff repeats and realleges paragraphs 1 through 106 hereof, as if fully set Forth herein.

108.    The Debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the Debtor's financial condition or business transactions might be ascertained.

109.    Upon information and belief, the Debtor has concealed and/or failed to

preserve recorded information from which the Debtor's financial condition or business transactions might be ascertained, including, but not limited to his interests in SFG.

110.    Upon information and belief, the Debtor has concealed information relating to his income by intentionally failing to file tax returns for the years 2016 through the present.

111.    By reason of the foregoing, Plaintiff is entitled to the entry of a judgment, pursuant to 11 U.S.C. § 727(a)(3), denying the Debtor a discharge.

## SIXTH CLAIM FOR RELIEF
(Denial of Discharge under 11 U.S.C. § 727(a)(4)(A))

112.    Plaintiff repeats and realleges paragraphs 1 through 110 hereof, as if fully set forth herein.

113.    The Debtor knowingly and fraudulently, in connection with this case, made a false oath or account.

114.    As set forth above, the Debtor knowingly and fraudulently failed to disclosure numerous interests in, his personal use of, and funds transferred to him from business interests and/or property furnished to Debtor through the use of strawman purchases.

115.    Debtor has intentionally, and knowingly, made false representations to the Trustee with regard to his professional licensing.

116.    Debtor has intentionally, and knowingly, made false representations to the Trustee with regard to his alleged inability to file federal tax returns for the years 2016 through the present.

117.    By reason of the foregoing, Plaintiff is entitled to the entry of a judgment, pursuant to 11 U.S.C. § 727(a)(4)(A), denying the Debtor a discharge.

## SEVENTH CLAIM FOR RELIEF

17

(Denial of Discharge under 11 U.S.C. § 727(a)(5))

118.   Plaintiffs repeat and reallege paragraphs 1 through 117 hereof, as if fully set forth herein.

119.   As aforesaid, the Debtor has failed to explain satisfactorily, before determination of denial of discharge under Section 727(a), the loss of assets or deficiency of assets to meet the Debtor's liabilities.

120.   By reason of the foregoing, Plaintiff i s entitled to the entry of a judgment, pursuant to 11 U.S.C. § 727(a)(5), denying the Debtor a discharge.

## **EIGTH CLAIM FOR RELIEF**
(Liability to Plaintiff By Virtue of Alter Ego Theory)

121.   Plaintiffs repeat and reallege paragraphs 1 through 120 hereof, as if fully set forth herein.

122.   At all relevant times, Debtor utilized SFG and its business assets as Debtor's own personal assets.

123.   Debtor maintained 100% control over the assets and business operations of SFG, including, but not limited, any of Plaintiff's business activities completed on behalf of SFG.

124.   Debtor devised all sales strategies imparted on behalf of SFG, including those which ultimately lead to the investigation described by Plaintiff at the meeting of creditors.

125.   Debtor personally wrote checks to Plaintiff in varying amounts from the SFG business account.

126.   Debtor maintained and ran SFG without any regard for corporate formalities.

127.   Debtor's compensation and/or use of SFG resources was unlimited and entirely subject to his own discretion.

18

128.    Upon inquiry, Debtor personally induced Plaintiff to continue generating sales on behalf of SFG by misrepresenting the financial condition of the business.

129.    In contrast, Debtor testified that he made over $400,000 from SFG during that same time period.

130.    Debtor is personally liable for the debt due to Plaintiff, which gave rise to the Massachusetts Judgment because SFG was nothing more than an instrumentality of the Debtor.

**WHEREFORE**, Plaintiff demands judgment on its claims for relief against the Debtor as follows:

1.    On his first claim for relief, pursuant to 11 U.S.C. § 523(a)(2)(A), the entry of a judgment excepting the debts due to Plaintiff from the Debtor's discharge awarding Plaintiff a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs.

2.    On his second claim for relief, pursuant to 11 U.S.C. § 523(a)(2)(B), the entry of a judgment excepting the debts due Plaintiff's from the Debtor's discharge and awarding Plaintiff a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs.

3.    On his third claim for relief, pursuant to 11 U.S.C. § 523(a)(4), the entry of a judgment excepting the debts due Plaintiffs from the Debtor's discharge awarding Plaintiff a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs.

4.    On his fourth claim for relief, pursuant to 11 U.S.C. § 523(a)(6), the entry of a judgment excepting the debts due Plaintiffs from the Debtor's discharge and awarding Plaintiff a sum no less than $1,405,996.30 as of December 9, 2019, together with interest thereon at the Massachusetts statutory rate of 12% per annum from December 9, 2019 and costs.

5.      On his fifth claim for relief, pursuant to 11 U.S.C. § 727(a)(3), the entry of a judgment denying the Debtor a discharge.

6.      On his sixth claim for relief, pursuant to 11 U.S.C. § 727(a)(4)(A), the entry of a judgment denying the Debtor a discharge.

7.      On his seventh claim for relief, pursuant to 11 U.S.C. § 727(a)(5), the entry of a judgment denying the Debtor a discharge.

8.      On his eighth claim for relief, pursuant to the alter ego theory, that Debtor should be held personally liable for the activities, conduct and damages giving rise to the state court Judgments in the Massachusetts Action against SFG and/or the Debtor in favor of the Plaintiff.

Dated: January 19, 2021

**HILL WALLACK LLP**

**By: _/s/ Angela C. Pattison, Esq._**
    **Angela C. Pattison, Esq.**
    **Hill Wallack LLP**
    **Attorneys for Plaintiff**

# EXHIBIT A

| JUDGMENT BY DEFAULT UPON ASSESSMENT OF DAMAGES<br>Mass. R. Civ. P. 55(b)(2) | Trial Court of Massachusetts<br>The Superior Court |
|---|---|

| DOCKET NUMBER<br>1884CV01942 | Michael Joseph Donovan, Clerk of Court |
|---|---|

| CASE NAME<br><br>Marden, Matthew<br>vs.<br>Simpson Financial Group Inc et al | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |
|---|---|

**JUDGMENT FOR THE FOLLOWING PLAINTIFF(S)**
Matthew Marden

Moke Smt
12/16/19
MTO
RM

**JUDGMENT AGAINST THE FOLLOWING DEFENDANT(S)**
Simpson Financial Group Inc
Louis A. Simpson

This action came on to be heard before the Court, Hon. Jeffrey A Locke, presiding, upon the marking of the motion of above named Plaintiff(s), in the above entitled action, for a default Judgment by the Court, pursuant to Mass.R.Civ.P. 55(b)2 and it appearing to the court that the complaint in said action was filed on 06/22/2018 and that the summons and complaint were duly served on the Defendant(s), and that no answer or other defense has been filed by the said defendant, and that default was entered in the office of the clerk of this court,
and that no proceedings have been taken by said Defendant since said default was entered.
    After Hearing, it is **ORDERED AND ADJUDGED:**
    The plaintiff(s) named above recover of the defendant(s) named above, Jointly & Severally
the "Judgment Total" with interest thereon as outlined below as provided by law, and the statutory costs of action.

| | |
|---|---|
| 1.  Date of Breach, Demand or Complaint | 06/22/2018 |
| 2.  Date Judgment Entered | 12/09/2019 |
| 3.  Number of Days of Prejudgment Interest *(line 2 - Line1)* | 535 |
| 4.  Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5.  Single Damages | $1,185,423.30 |
| 6.  Prejudgment Interest   *(lines 3x4x5)* | $208,652.28 |
| 7.  Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8.  Statutory Costs | $628.22 |
| 9.  Attorney Fees Awarded by Court  *(where authorized by law)* | $11,292.50 |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)**   *(Lines 5+6+7+8+9)* | $1,405,996.30 |

| DATE JUDGMENT ENTERED<br>12/09/2019 | ~~CLERK OF COURTS~~/ ASST. CLERK<br>X  *STEVEN  J.  M...* |
|---|---|

JUDGMENT ENTERED ON DOCKET _DOC16_ 20 _19_
PURSUANT TO THE PROVISIONS OF MASS. R. CIV. R59(a)
AND NOTICE SEND TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS. R. CIV. P. 77(d) AS FOLLOWS

Date/Time Printed:  12-09-2019 12:06:35                                                                    SCV060: 03/2017

# EXHIBIT B

| JUDGMENT BY DEFAULT UPON ASSESSMENT OF DAMAGES<br>Mass. R. Civ. P. 55(b)(2) | Trial Court of Massachusetts<br>The Superior Court |
|---|---|
| **DOCKET NUMBER**<br>1884CV01942 | Michael Joseph Donovan, Clerk of Court |
| **CASE NAME**<br><br>Marden, Matthew<br>vs.<br>Simpson Financial Group Inc et al | **COURT NAME & ADDRESS**<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

**JUDGMENT FOR THE FOLLOWING PLAINTIFF(S)**

Matthew Marden

**JUDGMENT AGAINST THE FOLLOWING DEFENDANT(S)**

Simpson Financial Group Inc

This action came on to be heard before the Court, Hon. Jeffrey A Locke, presiding, upon the marking of the motion of above named Plaintiff(s), in the above entitled action, for a default Judgment by the Court, pursuant to Mass.R.Civ.P. 55(b)2 and it appearing to the court that the complaint in said action was filed on 06/22/2018 and that the summons and complaint were duly served on the Defendant(s), and that no answer or other defense has been filed by the said defendant, and that default was entered in the office of the clerk of this court,

and that no proceedings have been taken by said Defendant since said default was entered.

After Hearing, it is **ORDERED AND ADJUDGED:**

The plaintiff(s) named above recover of the defendant(s) named above, Jointly & Severally the "Judgment Total" with interest thereon as outlined below as provided by law, and the statutory costs of action.

| | |
|---|---|
| 1. Date of Breach, Demand or Complaint | 06/22/2018 |
| 2. Date Judgment Entered | 12/09/2019 |
| 3. Number of Days of Prejudgment Interest *(line 2 - Line1)* | 535 |
| 4. Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5. Single Damages | $23,370.10 |
| 6. Prejudgment Interest   *(lines 3x4x5)* | $4,113.49 |
| 7. Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8. Statutory Costs | $.00 |
| 9. Attorney Fees Awarded by Court  *(where authorized by law)* | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)**   *(Lines 5+6+7+8+9)* | $27,483.59 |

| DATE JUDGMENT ENTERED<br>12/09/2019 | CLERK OF COURTS/ ASST. CLERK<br>X STEVEN J. M | JUDGMENT ENTERED ON DOCKET DEC 16 2019<br>PURSUANT TO THE PROVISIONS OF MASS. R. CIV. RCS(a),<br>AND NOTICE SEND TO PARTIES PURSUANT TO THE PRO-<br>VISIONS OF MASS. R. CIV. P. 77(d) AS FOLLOWS |
|---|---|---|

Date/Time Printed:  12-09-2019 12:10:17

SCV060: 03/2017

# EXHIBIT C

| Product Commission | Advance (Months) | Advance on Issue — Year 1 Compensation | | | | Year 2 | | Year 3 - 5 | | Year 6 - 10 | | Year 11+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Agency Manager | Team Manager | Sr. Account Executive | Account Executive | A.M. | TM, SAE; AE | A.M. | TM, SAE; AE | A.M. | TM, SAE; AE | A.M. | TM, SAE; AE |
| Health Insurance | 1 | $6 | $5 | $5 | $4 | $6 | $5 | $6 | $5 | $6 | $5 | $6 | $5 |
| Life - Simplified Issue | 6 | 65% | 62.5% | 62.5% | 50% | 6% | 5% | 6% | 5% | 3% | 2% | 3% | 2% |
| Critical Illness Direct | 6 | 35% | 30% | 30% | 25% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| Accidental Disability Direct | 6 | 35% | 30% | 30% | 25% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| Income Protection Direct | 6 | 35% | 30% | 30% | 25% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| Hospital Confinement Direct | 6 | 30% | 25% | 25% | 20% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| Vision | 6 | 30% | 25% | 25% | 20% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| ProtectFit Plus | 6 | 30% | 25% | 25% | 20% | 4% | 3% | 4% | 3% | 4% | 3% | 4% | 3% |
| Final Expense -Level Benefit Ages 45-80 | 6 | 70% | 65% | 65% | 60% | 9% | 6% | 9% | 6% | 3% | 3% | 2% | 2% |
| Final Expense -Level Benefit Ages 81-85 | 6 | 55% | 50% | 50% | 45% | 9% | 6% | 9% | 6% | 3% | 3% | 2% | 2% |
| Final Expense - Graded Benefit Ages 45-80 | 6 | 70% | 65% | 65% | 60% | 9% | 6% | 9% | 6% | 3% | 3% | 2% | 2% |
| Final Expense Graded Benefit Ages 81-85 | 6 | 55% | 50% | 50% | 45% | 9% | 6% | 9% | 6% | 3% | 3% | 2% | 2% |